IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| EMMANUEL JAMES HARRISON (BOP Register No. 43925-177), | § § § | |
| Movant, | § § | |
| V. | § § | No. 3:15-cv-1653-G-BN |
| UNITED STATES OF AMERICA, | § § § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
<u>UNITED STATES MAGISTRATE JUDGE</u>**

Movant Emanuel James Harrison, a federal prisoner, proceeding *pro se*, has filed a 28 U.S.C. § 2255 motion to vacate, set aside, or correct sentence, raising grounds that his guilty plea was involuntary and that his trial counsel was constitutionally ineffective. *See* Dkt. No. 2. Upon the retirement of then-Chief Judge Jorge A. Solis, this action was reassigned to Senior United States District Judge A. Joe Fish. *See* Dkt. No. 15. Pursuant to 28 U.S.C. § 636(b) and an order of reference, Judge Fish has referred it to the undersigned United States magistrate judge for hearing, if necessary, and recommendation. *See* Dkt. No. 16. The government has filed a response in opposition to Harrison's motion, *see* Dkt. No. 8, and Harrison has filed a reply brief, *see* Dkt. No. 9. The undersigned now issues the following findings of fact, conclusions of law, and recommendation that the Court should deny Harrison's Section 2255 motion.

**Applicable Background**

Harrison "pled guilty pursuant to a plea agreement to one count of conspiracy

to file false claims," in violation of 18 U.S.C. § 287; this Court denied his "motion to withdraw his guilty plea without an evidentiary hearing"; and [h]e was sentenced to eighty-four months of imprisonment and three years of supervised release." *Harrison v. United States*, 777 F.3d 227, 229 (5th Cir. 2015). Harrison appealed, "challenging only the district court's refusal to hold an evidentiary hearing on his withdrawal motion," *id.*, and the United States Court of Appeals for the Fifth Circuit affirmed his conviction and sentence, *see id.*

Through his timely-filed Section 2255 motion, *see* 28 U.S.C. § 2255(f)(1), Harrison seeks to relitigate the voluntariness of his guilty plea and also asserts that his trial counsel was ineffective pursuant to the Sixth Amendment, due to (1) counsel's alleged failure to investigate and (2) an alleged conflict of interest, *see* Dkt. No. 2.

**Legal Standards and Analysis**

I.  Voluntariness of Guilty Plea

A guilty plea is valid only if entered voluntarily, knowingly, and intelligently, "with sufficient awareness of the relevant circumstances and likely consequences." *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005). A plea is intelligently made when the defendant has "real notice of the true nature of the charge against him." *Bousley v. United States*, 523 U.S. 614, 618 (1998) (internal quotation marks omitted). And a plea is "voluntary" if it does not result from force, threats, improper promises, misrepresentations, or coercion. *See United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997).

In a published decision, and in the context of the showing required to withdraw a guilty plea, as set out in *United States v. Carr*, 740 F.2d 339, 343-44 (5th Cir. 1984), the Fifth Circuit addressed the voluntariness of Harrison's guilty plea:

> Harrison asserted his plea was involuntary due to the coercive nature of the plea bargaining process, which implicates *Carr*'s sixth factor. He alleged for the first time in a statement at his sentencing hearing that he was pressured to agree to a package plea deal that would spare his brothers from the possibility of receiving longer sentences. We must take "special care" in reviewing the voluntariness of "guilty pleas made in consideration of lenient treatment as against third persons," often referred to as "package" plea deals. But there is no indication that such a bargain existed here.
>
> Harrison offers no elaboration or discussion of this allegation on appeal other than to quote at length from the transcript of his sentencing hearing and to vaguely refer to "the conditions of the plea bargain agreement." Having scoured the record and the transcripts of Harrison's plea colloquy and sentencing hearing, we find absolutely no evidence supporting the existence of such a condition, much less the existence of coercion. Harrison and his counsel signed a plea agreement that did not contain a bilateral condition regarding his codefendant brothers, nor did it make any mention of his codefendants. Harrison and his counsel then signed a plea agreement supplement indicating that there were no additional terms to his plea agreement. When asked by the district court during his rearraignment whether he was pleading guilty "freely and voluntarily" and whether anyone had "tried to force [him] or threaten [him] or coerce [him] in any way," Harrison declared – under oath – in open court that he had not been coerced, that he was pleading guilty voluntarily, and that he was fully informed of the rights he was waiving. Again, even if we were to go against all of the available evidence and count as true Harrison's vague assertion, we cannot conclude that it tips the totality of the *Carr* factors in Harrison's favor.

*Harrison*, 777 F.3d at 246 (footnotes omitted).

It is well-established that "if issues 'are raised and considered on direct appeal, a defendant is thereafter precluded from urging the same issues in a later collateral attack.'" *Turner v. United States*, Nos. 4:15-cv-073-A & 4:12-cr-195-A, 2015 WL

1540911, at *3 (N.D. Tex. Apr. 3, 2015) (quoting *Moore v. United States*, 598 F.2d 439, 441 (5th Cir. 1979) (in turn citing *Buckelew v. United States*, 575 F.2d 515, 517-18 (5th Cir. 1978))). "A defendant is, of course, entitled to a hearing of his claims, but not to duplicate hearings. The appellate process does not permit reruns." *Moore*, 598 F.2d at 441. Accordingly, as Harrison "has had his day in court" as to this issue, *id.*, he cannot attempt to now "rerun" a claim that his guilty plea was involuntarily entered through this proceeding, and therefore the Court should deny this claim as precluded.

II.    Alleged Ineffective Assistance of Trial Counsel

The Court reviews Sixth Amendment claims concerning the alleged ineffective assistance of counsel – whether that counsel represents a defendant at trial or on appeal – under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Smith v. Robbins*, 528 U.S. 259, 285 (2000) ("the proper standard for evaluating [a] claim that appellate counsel was ineffective ... is that enunciated in *Strickland*" (citing *Smith v. Murray*, 477 U.S. 527, 535-36 (1986))).

Under *Strickland*, a movant must demonstrate that the performance of his attorney fell below an objective standard of reasonableness. *See* 466 U.S. at 687-88. And, to be cognizable under *Strickland*, counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. The movant also must prove that he was prejudiced by his attorney's substandard performance. *See id.* at 687, 692. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose

result is reliable." *Id.* at 687.

> [B]ecause of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."

*Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) (quoting *Strickland*, 466 U.S. at 689).

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003). Moreover, "[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Harrington v. Richter*, 562 U.S. 86, 110 (2011).

To demonstrate prejudice, a movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Harrington*, 562 U.S. at 111. "Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different," which "does not

require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.'" *Id.* at 111-12 (quoting *Strickland*, 466 U.S. at 693, 696, 697). "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112.

As Harrison pleaded guilty, to establish prejudice, he "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). This assessment

> will depend in part on a prediction of what the outcome of a trial might have been. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the prejudice inquiry will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. That assessment, in turn, will depend in large part on a prediction of whether the evidence likely would have changed the outcome of a trial.

*United States v. Kayode*, 777 F.3d 719, 724 (5th Cir. 2014) (quoting *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994) (in turn citing *Hill*, 474 U.S. at 56-58)); *see also del Toro v. Quarterman*, 498 F.3d 486, 490 (5th Cir. 2007) (a movant "need not prove by a preponderance that the result of the proceedings in the trial court would have been different, but he must sufficiently undermine confidence in the outcome to illustrate that counsel's deficient performance caused the outcome of the proceeding to be unreliable or the proceeding to be fundamentally unfair" (citing *Armstead*, 37 F.3d at 207)).

A.  Alleged Failure to Investigate

Under *Strickland*, counsel's duty is "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." 466 U.S. at 691. And the Fifth Circuit has held that, "[i]n assessing unreasonableness a heavy measure of deference must be applied to counsel's judgments. A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989) (citations omitted).

> Without such a showing, "'it is very difficult to assess whether counsel's performance was deficient, and nearly impossible to determine whether the petitioner was prejudiced by any deficiencies in counsel's performance.'" *Id.* (quoting *United States ex rel. Partee v. Lane*, 926 F.2d 694, 701 (7th Cir. 1991)). The Fifth Circuit has advised: "We must be particularly wary of 'argument[s] [that] essentially come[ ] down to a matter of degrees. Did counsel investigate enough? Did counsel present enough mitigating evidence? Those questions are even less susceptible to judicial second-guessing." *Dowthitt v. Johnson*, 230 F.3d 733, 743 (5th Cir. 2000) (quoting *Kitchens v. Johnson*, 190 F.3d 698, 703 (5th Cir. 1999)) (alterations in original).

*Chapman v. United States*, Nos. EP-14-cv-0062-KC & EP-09-cr-2453-KC-3, 2015 WL 2339114, at *12 (W.D. Tex. May 13, 2015).

Harrison contends that his trial counsel failed to investigate "mitigating and exculpatory evidence," Dkt. No. 2-1 at 8, and, in support of this general assertion, Harrison has provided the Court with exhibits that include the reports of interviews conducted by the IRS special agents investigating the criminal case and self-serving sworn statements from co-defendants, *see id.* at 22-71. But Harrison has failed to

"allege with specificity" what information can be gleaned from these exhibits, to the extent that information was not already known by counsel. And, more importantly, considering the information in the exhibits, Harrison has not alleged what further "investigation would have revealed and how it would have altered the outcome of the trial." *Green*, 882 F.2d at 1003. In addition, Harrison has failed to allege prejudice under *Hill* by showing any likelihood that the investigation(s) he claims his trial counsel was constitutionally ineffective for not pursuing would have led to evidence that "likely would have changed the outcome of a trial." *Armstead*, 37 F.3d at 206.

Therefore, the Court should deny this claim.

B.  Alleged Conflict of Interest

The basis of Harrison's claim that his trial counsel was constitutionally ineffective because of a conflict of interest turns on counsel's alleged representation of Harrison's co-defendant, Fread Jenkins, during the plea process. *See* Dkt. No. 2-1 at 15-17 (claiming that "[a]fter counsel represented Jenkins in his plea proceedings[, counsel] was unwilling to interview Jenkins or take a statement from him as it related to Harrison's actual innocence" (emphasis deleted)).

"The Sixth Amendment right to counsel includes the 'right to representation that is free from any conflict of interest.'" *United States v. Culverhouse*, 507 F.3d 888, 892 (5th Cir. 2007) (quoting *United States v. Vaquero*, 997 F.2d 78, 89 (5th Cir. 1993)). And, in the context of multiple representation – which Harrison appears to allege – a Sixth Amendment violation is proven if a movant shows "an actual conflict that adversely affected representation." *Id.* (citing *Cuyler v. Sullivan*, 446 U.S. 335, 348-49 (1980);

*Micken v. Taylor*, 535 U.S. 126, 169 (2002)).

While Harrison alleges that his counsel facilitated Jenkins's execution of his plea agreement on August 2, 2013, offering a sworn affidavit from Jenkins to support this allegation, *see* Dkt. No. 2-1 at 50, Harrison's allegations and Jenkins's affidavit are belied by the record in Jenkins's criminal case, which reflects that Jenkins and Jenkins's own counsel executed Jenkins's plea papers on August 2, 2013, *see, e.g., United States v. Jenkins*, No. 3:11-cr-339-P (04) (N.D. Tex.), Dkt. No. 140 (plea agreement), the same day that the Court conducted Jenkins's rearraignment hearing, *see id.*, Dkt. No. 139.

But even if the Court accepts Harrison's version of events, Harrison has failed to prove the existence of an actual conflict, because "the first prong of *Cuyler* requires a defendant to show something more than a speculative or potential conflict." *Culverhouse*, 507 F.3d at 892 (citing *United States v. Infante*, 404 F.3d 376, 391-92 & n.13 (5th Cir. 2005)); *see, e.g., United States v. Mobley*, Cr. No. 10-0243-WS-C, 2013 WL 4166553, at *10 (S.D. Ala. Aug. 15, 2013) ("[A] speculative or merely hypothetical conflict of interest does not yield a Sixth Amendment violation." (citations omitted)).

Instead, the showing required is that the alleged conflict "compelled" [Harrison's] counsel "to compromise his [ ] duty of loyalty or zealous advocacy to [Harrison] by choosing between or blending the divergent or competing interests of a former or current client." *United States v. Garcia-Jasso*, 472 F.3d 239, 243 (5th Cir. 2006) (internal quotation marks omitted); *see also United States v. Preston*, ___ F. App'x ___, No. 15-30351, 2016 WL 4245450, at *7 (5th Cir. Aug. 10, 2016) ("[A]n 'actual

conflict' ... is a conflict of interest that adversely affects counsel's performance." (citation and internal quotation marks omitted)); *United States v. Apodaca*, 603 F. App'x 303, 304 (5th Cir. 2015) (per curiam) ("An attorney's performance [is] adversely affected by a conflict of interest where counsel could [pursue] a plausible alternative defense strategy or tactic but [chooses] not to do so because of the conflict." (citation omitted)).

Harrison's conflict-of-interest theory turns on his allegation that Jenkins came to the attorney's office to provide counsel with a statement that Harrison was actually innocent and that after counsel facilitated Jenkins's execution of his plea papers, counsel did not obtain such a statement from Jenkins. Implicit in this theory is Harrison's belief that, had Jenkins provided his statement to counsel, Harrison's attorney then would have pursued a different defense strategy based on Jenkins's statement in support of Harrison.

The Court need not critique the wisdom of such a strategy, because, as long as it is reasonable, even an unwise strategy may still be plausible. *Cf. United States v. Merlino*, 523 F. Supp. 2d 66, 70 (D. Mass. 2007) ("It would appear that Merlino satisfies the first prong of the test because it was a 'plausible (though likely unwise) alternative defense strategy' for Merlino to take the stand and proclaim his innocence, or possibly to call Mrs. Romano and the private investigator as impeachment witnesses." (quoting *Reyes-Vejerano v. United States*, 276 F.3d 94, 97 (1st Cir. 2002)).

However, Harrison must still show that his counsel chose not to pursue the alternative strategy "*because of* the conflict." *Apodaca*, 603 F. App'x at 304 (emphasis

added); *see Merlino,* 523 F. Supp. 2d at 70 ("[T]he [remaining] the question for the court is whether Parker declined to pursue such a strategy because of his divided loyalties." (citing *Reyes-Vejerano*, 276 F.3d at 98)). Through his conclusory allegations, Harrison fails to make this showing, and therefore the Court should deny this claim.

## Recommendation

The Court should deny Harrison's Section 2255 motion and all pending motions.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: October 11, 2016

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE